### THORE E. DYBDAL v. LEWIS T. FAGERBERG.[1]

July 26, 1907.

Nos. 15,189—(105).

**Trust Mortgage—Fraud—Accounting.**

When the grantee in a deed given to secure the payment of a debt conveys the land in fraud of the trust, and receives other land in exchange, the defrauded grantor (or mortgagor) may at his election require the grantee to account for the value of the land conveyed, the value of the land received in exchange, or the specific property thus received.

**Same.**

In this case the mortgagee exchanged the mortgaged land and $3,000 of his own money for a farm worth $5,600. *Held,* that the defrauded mortgagor was entitled to a judgment for $2,600, upon proving that the land received was worth $5,600.

Action in the district court for Grant county begun by the guardian of Ole T. Fagerberg, an insane person. After the death of the ward, Thore E. Dybdal was appointed administrator of his estate and substituted as plaintiff in the action, which was to recover the sum of $2,600. The action was tried before Flaherty, J., as one in equity, a jury answering certain questions of fact in the manner specified in the opinion, and the court made findings and ordered judgment in favor of plaintiff for the sum of $2,602.33. From an order denying his motion to set aside the findings of fact, the verdict and answers of the jury, and for a new trial, defendant appealed. Affirmed.

*K. T. Dahlen* and *C. J. Gunderson,* for appellant.
*E. J. Scofield,* for respondent.

[1] Reported in 112 N. W. 1018.

ELLIOTT, J.

Ole T. Fagerberg, the plaintiff's intestate, entered certain lands in Polk county as a homestead in 1884 and in due time received a patent therefor from the United States. A few days after he made his final proof Fagerberg executed a mortgage on the land to one Drew to secure the payment of a small indebtedness. Lewis T. Fagerberg, the appellant herein, claims that he furnished his brother Ole various sums of money and other things of value at different times before June, 1895, amounting in all to $512. In February, 1895, Lewis paid the Drew mortgage and also certain delinquent taxes on the land, and at that time Ole conveyed the land to his brother Lewis as security for his indebtedness. The description in this deed was defective, and the deed was not recorded. On June 6 of the same year, a new deed was given and duly recorded. Ole continued to reside on the land as before, but Lewis paid the taxes. In January, 1893, Ole's health failed, and he was cared for at the home of a neighbor for a while, after which he was taken to the home of his brother Lewis, and subsequently, on the complaint of Lewis, committed to the insane asylum. He remained there until about the time of the trial of this case, when he was paroled, and soon thereafter died. The respondent herein is the administrator of his estate.

In November, 1903, Lewis traded the land in question with one Brinkman for one hundred sixty acres of land in Grant county, which the testimony shows was worth $5,600. In addition to conveying the Polk county land, Lewis paid Brinkman $1,500 in cash and assumed a mortgage for $1,500. In the transaction the Polk county land was apparently estimated as worth $2,600.

This action was brought by the guardian of Ole, for whom the administrator was subsequently substituted, to recover the sum which it was alleged that Lewis had received for the land in the trade with Brinkman. It was alleged that the deed from Ole to Lewis of June 5, 1895, was in fact a mortgage, and that Lewis, in violation of his trust, had conveyed the land to Brinkman for the purpose of defrauding Ole, and had appropriated the proceeds to his own use. It was also claimed that Ole was insane at the time he executed the deeds to Lewis. Special questions were submitted to a jury, and the court made its findings of fact in accordance with the jury's answers, and

ordered judgment in favor of the plaintiff for $2,600. The appeal is from an order refusing to set aside the findings of the jury and refusing to grant a new trial.

The jury, in answering the interrogatories, found (1) that the conveyances from Ole T. Fagerberg to Lewis T. Fagerberg were made for the purpose of securing the payment of money; (2) that when the conveyances were made Ole T. Fagerberg was mentally incompetent; (3) that the value of Ole's land in Polk county, when conveyed on June 5, 1895, was $300; and (4) that Lewis T. Fagerberg realized on the Polk county farm, in the exchange of the same with Brinkman, the sum of $2,600. The court found that Ole was indebted to Lewis in the sum of $359.94. After deducting this amount, with accumulated interest, and $65, which Lewis had received as rents, from the $2,600, judgment was ordered against the defendant for the sum of $2,602.33.

There are many assignments of error, most of which go to the correctness of rulings upon the reception and rejection of evidence. We have considered these carefully, but find no errors which would justify a reversal.

The question of the sufficiency of the evidence to justify the findings of fact and conclusions of law is not argued in the brief, and must be considered as abandoned. Nor do we consider it necessary to discuss the question whether the deed of an insane person is void or voidable. The appellant asserted throughout the trial that Ole T. Fagerberg was sane at the time the deed was given, and that the deed was absolute and valid. The jury found that Ole was not mentally competent, and that the deed was in fact a mortgage given to secure the payment of a debt. After having taken this position, and sold the security, and appropriated the proceeds to his own use, the appellant will not be heard to assert that the conveyance was absolutely void for any purpose and incapable of being ratified by the representative of the insane person. As a matter of fact, the findings of the court and jury are amply sustained by the evidence. The instrument, in form a deed, was in fact a mortgage.

The appellant disposed of the Polk county farm in violation of the agreement between him and his brother, and must account for the proceeds of the sale—the value of the land sold, or the value of the land

received in exchange, at the option of the party defrauded or his representative. Darling v. Harmon, 47 Minn. 166, 49 N. W. 686. In this case the plaintiff elected to demand the value of the land received in exchange, and the only serious question arises from the fact that the appellant paid $3,000 for the Brinkman farm in addition to the Polk county land. We cannot see, however, that this should prevent the wronged party from recovering what was actually received for the mortgaged property. If a profit was made, it belonged to the party whose land was misappropriated, and not to the wrongdoer, and the court will not attempt to determine how much of that profit resulted from the use of the appellant's cash and credit.

In Dietel v. Home Savings & Loan Assn., 59 Minn. 211, 60 N. W. 1100, it was held that when a mortgagee, in violation of his trust, transferred the mortgaged property to an innocent purchaser and received therefor real estate upon which there was an existing mortgage, the mere recital of the value of the equity in the deed of conveyance was not sufficient to justify the conclusion that the land was worth that amount over and above the mortgage. It was held that the burden of showing the value of the equity was cast upon the plaintiff, and it would not be assumed that the consideration named in the deed was the actual value received by the defendant in the transaction. In the present case the plaintiff showed by affirmative evidence that the Brinkman land was worth $5,600, and that the recital in the deed was therefore the actual value of the property received.

The order of the trial court is therefore affirmed.

The following opinion was filed on January 6, 1908:

PER CURIAM.

A reargument was granted the appellant, and he has fully argued the questions raised by the assignments of error based on certain rulings of the trial court excluding evidence. The rulings are not of general interest, and involve no questions of law which might be important as precedents. The correctness of these rulings is determinable after a consideration of the condition of the evidence at the time, and the character of the offer, or offers, made. A detailed discussion would merely add a few pages to the reports and determine nothing that would be of any future value. The rulings were correct. We find no reason for departing from the conclusion already reached, and therefore adhere to the former opinion.