## JOSEPH BAUER v. O'BRIEN LAND COMPANY.[1]

### November 14, 1919.

### No. 21,383.

**Exchange of property — rescission after conveyance to innocent party.**

1. Plaintiff was induced to trade farms with defendant through the latter's misrepresentations, and he sues for rescission. On the trial it appeared that, before plaintiff discovered the fraud practiced upon him and before his offer to rescind, defendant had conveyed to innocent third parties the farm deeded to it pursuant to the agreement to trade. It is *held* that the measure of restitution is the value of the farm which plaintiff parted with at the time the trade was made, and not what defendant afterwards received on a sale thereof.

[1]Reported in 174 N. W. 736.

### Decision supported by findings.

2. The findings that defendant made false representations as to the farm it traded for plaintiff's are amply sustained as to several material matters alleged in the complaint, and these support the judgment, even though as to others the evidence be insufficient. The finding as to the value of the farm plaintiff parted with has support.

### Election of remedy — when restitution is impossible.

3. A defrauded party, by offering to rescind, does not thereby forego his equitable remedy of rescission. He still has his election to sue in equity for rescission or at law for damages. And if he sues for rescission, the court is not divested of jurisdiction to proceed, if it develops that restitution in kind cannot be had because, prior to the offer to rescind, the other party to the transaction had disposed of the property obtained to good faith purchasers without notice of fraud.

### Harvesting of crop not waiver of fraud when contract is divisible.

4. The evidence does not conclusively show a waiver of the misrepresentations. The contract for the exchange of the farms had been consummated when plaintiff discovered the fraud so far as the transfer of the title was concerned, but not as to the part thereof relating to the leasing. When defendant refused to rescind and threw upon plaintiff the duty to harvest and care for the crops, his so doing should not be construed as a waiver of the fraud. Furthermore, the deeding and the leasing may be considered as divisible parts of the contract, so that the one could be rescinded and the other carried out.

Action in the district court for Traverse county for rescission of a contract to trade farms and for reconveyance of land in Traverse county, or for $52,274. One defense was that the court was without jurisdiction of the subject matter of the action or to grant equitable relief therein, for the reason that the plaintiff had a full, complete and adequate remedy at law. The case was tried before Flaherty, J., who made findings and ordered judgment in favor of plaintiff as stated in the third paragraph of the opinion. Defendant's motion for a new trial was denied. From the judgment and from an order denying its motion for a new trial, defendant appealed. From an order denying his motion to modify finding of fact No. 27 and conclusion of law No. 6, and change the judgment, plaintiff appealed. Affirmed on both appeals.

*Boyeson & Flor* and *Wolfe & Schneller*, for plaintiff.

*Daniel H. Grady* and *R. S. Jones*, for defendant.

HOLT, J.

Action for rescission and restitution based on defendant's fraud inducing plaintiff to trade farms.

Plaintiff owned a 480-acre farm near Graceville, this state, and defendant a 320-acre farm near Pawnee, Nebraska, when negotiations for a trade were opened between them in the fall of 1916. In March, 1917, a contract for exchange was executed, and shortly thereafter deeds were passed. In July, 1917, plaintiff discovered that representations made by defendant as to the Nebraska farm were false. His attempt to rescind having failed, this action was instituted.

The complaint avers misrepresentations as to the value of the Nebraska farm, the acreage under cultivation, the terms under which it was rented, and the title. The findings are to the effect that the defendant did make material misrepresentations in those respects, which induced plaintiff to make the exchange; that the latter did not discover their falsity until shortly before the action was brought; that upon the discovery of the fraud he offered to rescind, tendered a reconveyance of the land deeded to him, and offered to restore all he received; that defendant refused to accept the tender; that prior to plaintiff's offer to rescind defendant had sold and conveyed the farm it received to good faith purchasers, and that the value of plaintiff's equity in that farm, with interest from the time of the transaction, was $23,540.84, for which sum judgment was ordered in plaintiff's favor. Both parties appeal from the judgment.

Plaintiff's appeal is based upon the proposition that, since by fraudulent misrepresentations defendant induced plaintiff to convey, it became a trustee de son tort accountable as such to plaintiff for the land conveyed and its proceeds. Plaintiff at the trial announced his desire to limit the evidence offered upon the amount of restitution to the proceeds obtained by defendant when it sold the farm, claiming whatever defendant realized from its disposition and not its value at the time the exchange was effected. We think plaintiff's contention unsound. Defendant obtained the title to the farm with full right of disposition. Plaintiff so intended when he delivered the deed. Notwithstanding the fraud, defendant remained the owner, both legally and equitably, until there was a rescission either by the court or by plaintiff's own act. Had de-

fendant disposed of the farm after plaintiff's attempted rescission, a different question would have been presented. The sale then would have been a legal wrong upon plaintiff.

The status of the parties prior to plaintiff's offer to rescind was not the same as in Dybdal v. Fagerberg, 102 Minn. 130, 112 N. W. 1018, relied on by plaintiff. There, as well as in Darling v. Harmon, 47 Minn. 166, 49 N. W. 686, the grantee in a deed, which was in fact a mortgage, had, without the grantor's knowledge or consent, sold the property. When such deed was given it was never intended that the grantee could or would sell. Hence the sale constituted a conversion, and the grantor could recover the then value of the land or the proceeds.

In the case at bar, until there was a rescission by the act of plaintiff, the Graceville farm must be regarded even in equity as defendant's to be dealt with as its property, hence, by the act of selling or trading it, prior to the rescission, no trusteeship de son tort was created. The wrong was committed when the farm was obtained by means of fraud, and, since it cannot now be restored, its value, with interest since the transaction, must measure the restitution that equity will award. In this respect equity should follow the well established rule of compensation applied in actions at law for fraud inducing an exchange of property. Nelson v. Gjestrum, 118 Minn. 284, 136 N. W. 858. Thereby plaintiff is not wronged. When he traded, he intended to part with the Graceville farm for good, and at its then fair market value. If he did overreach defendant in the trade, equity ought not to be overly anxious to secure to him his good bargain. It is enough when he gets full value for that which he intended to part with.

The defendant challenges many findings, and contends that upon the facts found and the undisputed evidence two complete legal defenses are shown. In addition, error is assigned upon three rulings permitting answers to certain questions over defendant's objection. The testimony elicited by the questions is of such slight, if any, bearing on the issues that no reversal can be predicated on the rulings, and no further reference will be made thereto.

An attentive perusal of the record convinces us that the trial court was so amply justified in finding that false representations were made in respect to the value of the Nebraska farm, the acreage under cultivation,

and the terms upon which it was then rented that, under the well established practice guiding this court, we cannot disturb them. That being so, plaintiff was clearly entitled to rescission even if some of the other findings be without support, unless the alleged legal defenses, claimed by defendant, prevent. In passing, we only observe that whether the representation as to value was merely the usual trade talk upon which plaintiff had no right to rely, or whether, in view of the situation of the parties, it amounted to an actionable fraud, if false, was for the trial court to determine. Nor does the testimony of plaintiff that he did not wholly rely upon the representations made to him defeat his action for rescission. Kraus v. National Bank of Commerce of Mankato, 140 Minn. 108, 167 N. W. 353; Schmidt v. Thompson, 140 Minn. 180, 167 N. W. 543. The finding that the Graceville farm was worth $75 per acre when the deal was made must be held supported. The price fixed upon it in the trade was $85 per acre. Plaintiff testified that that was the true value, whereas defendant's witnesses placed it from $50 to $60 per acre. Such being the evidence it is plainly our duty to let the finding stand. An attempt to analyze or excerpt the voluminous testimony bearing on the findings made, or on those requested, would be of no future use for the bench or bar, and we forbear.

One of the claimed legal defenses, above alluded to, is that the record discloses plaintiff to have an adequate remedy at law for damages; therefore this suit should have been dismissed, and he should have been relegated to his action at law. And, because this was not done, defendant also predicates error in that he lost his right to a jury trial on the question of damages. At no time during the trial did defendant intimate a desire to have a jury determine any issue in the case, and we think it is not now in position to complain of deprivation of a jury to pass on the value of the farm it obtained by misrepresentation. As we understood the argument of defendant, it was conceded that the complaint states a cause of action in equity, but the contention is that, when it appeared that plaintiff had rescinded by his own act, his cause of action in equity was gone, and there only remained an action at law for damages. It is also urged that the same consequence resulted when it appeared that restoration could not be had, because, before suit, the farm had been disposed of to innocent good faith purchasers. We think neither the one nor the other

of these facts, nor the two together, ousted the court of its power to proceed to final adjustment of the rights of the parties.

It is true that, where a defrauded party has rescinded by his own act, he may sue at law and recover as damages the value of what he parted with. I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728. But that does not mean that, where his offer of rescission had been spurned, he may not pursue his remedy in equity. His unaccepted tender of rescission did not destroy the equitable remedy. Had defendant held the title to the Graceville farm at the time of trial, or had the then owners become such with notice of the fraud practiced on plaintiff, there could be no question but that the suit would be in equity. Because plaintiff was unable to prove that the persons to whom defendant conveyed had notice of the misrepresentations, did not divest the court of the power to proceed to do equity in the case by requiring a money restitution of the value of the farm. It may also be suggested that a decree in equity, annulling the deal as far as it could be done, was necessary to relieve the plaintiff from the assumption clause to pay the $13,000 mortgage in the deed of the Nebraska farm, to the extent that defendant might seek to avail itself thereof.

The complaint states a good cause of action for rescission for fraud and restoration of what was parted with. Predicated on the fact of rescission, plaintiff was entitled to such relief in the action, legal or equitable, as the facts proved required. Hoffman Motor Truck Co. v. Erickson, 124 Minn. 279, 144 N. W. 952. "When a court of equity once takes jurisdiction of a case it is its duty to determine all rights and obligations pertaining to the subject-matter and to grant full measure of relief. Though a party fails to prove some fact alleged, necessary to the full measure of the relief demanded, if he proves facts within the allegations of his complaint entitling him to some relief it must be awarded to him." 2 Dunnell, Minn. Dig. § 5041. Assuming that the court was right in holding that there was no waiver of the fraud after knowledge thereof, the suit remains in equity and the rule in Marshall v. Gilman, 47 Minn. 131, 49 N. W. 688, does not apply.

The other law proposition urged as a defense is that the record conclusively shows a waiver of the fraud and affirmance of the transaction after knowledge of the deception, hence an action for rescission cannot

be maintained. As a general rule, a party who has been induced to enter an executory contract through fraud affirms the contract or waives his right to rescind if, after discovery of the fraud, he avails himself of any provision of the contract or continues to receive benefits thereunder. Crooks v. Nippolt, 44 Minn. 239, 46 N. W. 349; Wagner v. Magee, 130 Minn. 162, 153 N. W. 313. Do the facts in this case show a waiver of the fraud so that an action for rescission does not lie?

It is to be noted that when the fraud was discovered the contract of exchange had been virtually fully executed. The respective deeds had been executed and delivered. It is true, the contract contained a provision under which, for the farming season of 1917, plaintiff became a tenant of the Graceville farm. But this was a mere incidental matter to the main transaction. Plaintiff had planted and cultivated the crop, when, in July, he discovered the fraud. At that time defendant had conveyed the land to two different parties. Plaintiff did not know whether these were bona fide purchasers or not, nor what rights they had to the rent. He offered to rescind. Defendant refused. Suit was promptly brought, and was pending when the acts from which defendant claims waiver occurred. The crops had to be gathered. Defendant insisted on being the landlord, entitled to a share as the crops were harvested and to the cash rent. To avoid a lawsuit on account of the tenancy, plaintiff acquiesced in defendant's demands. Under these circumstances, his remaining in possession for the purpose of caring for the crop and turning over the share defendant insisted on having, should not be held a waiver of the fraud or an affirmance of the land deal. Mayer v. Knudsen, 126 Minn. 85, 147 N. W. 819, holds that acts tending to show a recognition of a contract as still in force, after discovery of the fraud tainting its inception, do not necessarily amount to an affirmance. It depends on the surrounding circumstances. And in Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L.R.A. 1917F, 476, a defense of waiver of the fraud and affirmance of the contract was attempted in an action to recover the purchase price paid for a business sold through the defendant's fraud, where, after discovery thereof, the plaintiff's offer to rescind had been refused, but it was held that the fraud was not waived or the contract affirmed by the plaintiff remaining in possession and continuing the business. Some one had to take care of the property and business.

The defendant's refusal to so do, whereby the responsibility was thrown upon the plaintiff therein, should not work to the latter's disadvantage. So here we think that defendant should not be allowed to escape the consequence of its fraud, by taking advantage of the situation it placed plaintiff in by wrongfully refusing the tendered rescission. This suit was pending when every act now relied on by defendant to show waiver was done. Neither party contemplated that such acts were done with a view to affect the pending cause of action.

There is another view which leads to the same result. As above stated, the leasing was a mere incident to the exchange of the farms. No fraud or misrepresentation related to the subject matter or the terms of the lease of the Graceville farm. The contract, so far as the exchange of the farms was concerned, had been fully executed when the fraud was discovered. The terms of the lease do not appear to form any part of the consideration for the exchange of the farms. The contract may be considered divisible, and a performance of the unexecuted part as not affecting the part executed and to which alone the fraud related. In Edward Thompson Co. v. Schroeder, 131 Minn. 125, 154 N. W. 792, a written contract for the purchase of two sets of books was held divisible so that the purchaser, who had been induced to enter the contract through misrepresentations concerning one set, could rescind as to that. Bank of Antigo v. Union Trust Co. 149 Ill. 343, 36 N. E. 1029, 23 L.R.A. 641.

We think the judgment should be affirmed on both appeals.