# J. R. STANTON v. MORRIS CONSTRUCTION COMPANY. COUNTY OF PINE, APPELLANT.[1]

May 23, 1924.

No. 23,923.

**Evidence admissible.**

1. No prejudicial error could result to the county from evidence of representations made by its engineer, who had made a survey and indicated his findings upon a survey map for the use of those invited to bid for the construction of certain bridges.

**Statements of county commissioners in open meeting admissible.**

2. Statements made by members of the county board in an open meeting, when the contractor, who had entered a contract for the construction of a bridge induced so to do by an alleged untrue representation upon the survey map regarding the condition of the bed of the stream where the piers were to be placed, pressed a claim for extra compensation, were properly received on the issue of waiver.

**Explanation of survey map by expert engineer admissible.**

3. No reversible error was made in admitting the testimony of an expert engineer as to the interpretation of the survey map.

**Finding that false representations on map warranted rescission of bridge contract.**

4. The evidence justified the court in finding that the representation on the survey map induced respondent to make the bid and enter the contract it did; that it was untrue; that it occurred through mutual mistake and warranted granting a rescission of the contract.

**Contractor not estopped by his acts.**

5. There was no waiver of the mistake or affirmance of the contract by continuing the work after knowledge so as to preclude the relief granted the contractor.

In an action in the district court for Pine county against the Morris Construction Company and others, the county of Pine filed

[1]Reported in 199 N. W. 104.

its complaint in intervention. The facts are stated in the opinion. The case was tried before Searles, J., who made findings and ordered judgment in favor of the construction company against the county of Pine. From an order denying its motion for additional findings and for a new trial, intervener appealed. Affirmed.

*Albert Johnson*, County Attorney, *S. G. L. Roberts* and *Catlin & Bronson*, for appellant.

*Cowern & Jesmer* and *Lamson & Reinhold*, for respondent.

HOLT, J.

The controversy in this case relates to a concrete bridge at Willow River which the Morris Construction Company, a corporation, agreed to build for the county of Pine for the sum of $3,120. It appears that in response to an invitation by the county for proposals to construct 5 concrete bridges along State Trunk Highway No. 1, the Morris Construction Company, with other contractors, responded in February, 1918. This company was the lowest bidder and received the contract. It acceptably constructed 4 of the bridges and a certain balance due therefor is agreed to. It began the construction of the Willow River bridge, but difficulties in excavating for the piers or abutments were encountered in that, instead of the material to be moved being sand and gravel, as it is claimed the county represented, it consisted of logs, slabs, large rocks and debris of various kinds. This made it exceedingly difficult to sink cofferdams and prevent water entering. After building the south pier or abutment, and partly preparing for the other at the cost or outlay of over $7,000, and not being able to obtain any written agreement for additional compensation, the company ceased work. Later the county employed another concern to complete the bridge at a cost of over $8,000.

Thereafter one who had furnished material to the construction company for the bridge began this action against it, its bondsman and the county, to secure payment therefor. The county obtained leave to file a complaint of intervention against its codefendant, the construction company, for damages. To this complaint the company answered, alleging in substance that for the purpose of furn-

ishing information to bidders upon which they could rely, and with intention that bidders should rely thereon so that the county might obtain the lowest possible bids, the county prepared plans and specifications whereon it was positively stated and represented that the soil to be excavated was clear sand and gravel; that said information was false in that instead of being clear sand and gravel it turned out to be boulders and what is commonly known as "mill hog feed," consisting of butts of trees, slabs of wood, etc., making the excavation thereof exceedingly slow, difficult and expensive; that when the true condition was discovered the construction company took the matter up with the county for adjustment, but pending such adjustment, when the county refused to pay the balance for the bridges already constructed, the construction company ceased work. Counterclaims for extra work were also set up, but the validity and amounts thereof were stipulated at the trial and need not be noticed. The company also alleged the value of its work on this bridge in a sum of over $7,400, and asked that the contract be canceled by the court on the ground of mutual mistake, that reimbursement be awarded for said sum expended, and that it have such other legal and equitable relief as might be just. The reply denied the representations and the right of the bidders to rely upon statements contained in the plans and maps exhibited to them, and also averred that, after the construction company was aware of the condition of the material where the excavations were to be made, it continued with the work and thereby affirmed the contract, notwithstanding the misrepresentations or mutual mistake, if any.

Before the trial, plaintiff's claim was paid, so that the issues tried were solely those made by the pleadings between the county and the construction company and the former may be referred to hereinafter as plaintiff and the latter as defendant.

Certain assignments of error relate to the admissibility of testimony of statements or representations by the county engineer. It appears that previous to calling for bids the county engineer had made surveys for the location of the bridges, and plans and specifications. The State Highway Commission furnished forms upon which the engineer entered the result of his work. This is known

as bridge survey, plans and specifications. All were in the custody of the engineer, and to him the bidders came for information. The county had caused him to make the survey, and, no doubt, he was authorized to give to persons intending to bid not only the information he had reduced to writing, but also such as he had gained in making the survey and which would likely tend to secure low or favorable bids for the county. The oral inducements or representations thus held out by the engineer we think properly received in evidence. But even if not, the error should not reverse, for the oral information added nothing of substance to that conveyed by the survey map referred to.

Complaint is also made of admission in evidence of statements made in an open meeting of the county board by members thereof when defendant urged its claims for additional compensation, after it discovered the character of the excavation. Even if the statements made did not bind the county, evidence thereof was admissible on the issue whether or not defendant waived the false representations by continuing work after knowledge of the truth.

An engineer was asked as an expert whether there was anything on the profile, showing the plan of this bridge, or the data contained thereon which would negative the statement that the material is sand and gravel. The record indicates that the so-called bridge survey map was meant. This was objected to on the ground that the exhibit spoke for itself. The answer was: "The indications are that it is sand and gravel that would be encountered in the excavation." The evidence could not have prejudiced, because we think no other conclusions can be arrived at from an inspection of the exhibit by even a nonexpert.

The determination of this appeal is controlled by these propositions: (a) Did the bridge survey constitute a representation as to the character of the excavation for the abutments of the bridge upon which defendant had a right to rely? and (b) being untrue, did the defendant establish its right to rescission so as to recover the reasonable value of the work done?

Although the bid and contract embraced 5 bridges, a specific price was named for each. The contract may therefore be treated

here as if made for the Willow River bridge alone. Already attention has been called to the fact that the advertisement for bids was made in the middle of winter when the ground was frozen and covered with deep snow, so that no examination could well be made to ascertain condition; that plaintiff had caused a so-called bridge survey map to be made which contained statements as to the character of the soil to be dealt with, and that this was not only for its own information, but also for the information of prospective bidders. In this situation the authorities almost invariably support the proposition that the bidders have a right to rely upon positive representations respecting conditions to be found, unless a mere inspection reveals their falsity. The court could well conclude that, at the time plaintiff invited bids, no ordinary inspection would have disclosed the character of the material to be excavated. True, no active fraud or even negligence is claimed, in imparting the information that was given to bidders by either the bridge survey map or the oral statements of the engineer; but the court found, as defendant claimed, that a mutual mistake existed in regard to the condition of the excavation. This permits equity to grant the relief of rescission.

Courts have so held in cases on facts similar to the case at bar. Long v. Athol, 196 Mass. 497, 82 N. E. 665, 17 L. R. A. (N. S.) 96; Faber v. City of New York, 222 N. Y. 255, 118 N. E. 609; Hollerbach v. Inhabitants of U. S. 233 U. S. 165, 34 Sup. Ct. 553, 58 L. ed. 898; Christie v. U. S. 237 U. S. 234, 35 Sup. Ct. 65, 59 L. ed. 933; United States v. Spearin, 248 U. S. 132, 39 Sup. Ct. 59, 63 L. ed. 166; United States v. Atlantic Dredging Co. 253 U. S. 6, 40 Sup. Ct. 423, 64 L. ed. 735. The same principle is recognized in King v. City of Duluth, 78 Minn. 155, 80 N. W. 874, where "the bottom of the lake * * * was found to be materially different from what it was represented," giving rise to a lawsuit for extra compensation. In United States v. Atlantic Dredging Co. supra, referring to the above cited cases from that court it is said: "It is held in those cases 'that the contractor should be relieved, if he was misled by erroneous statements in the specifications.'"

So here, this entry was found upon the bridge survey map: "Bed of stream composed of solid sand-gravel, tried to take soundings with ½ inch rod, but could not get down in bed of stream." It is clear that this information pertained only to the place for the bridge abutments. The character of the bed of the stream at other points bore not at all upon the cost or difficulty of the job. At the place of the abutments it was all important. If there the river bed had been sand and gravel, there would have been a profit in the contract price of $3,120, whereas under the actual conditions it cost over $15,000 to build the bridge.

Plaintiff contends that there was a cautionary statement upon the map which precluded the bidders from placing reliance upon any statement therein. It is headed "Notice to Contractors" and reads: "The information on this sheet was compiled by the highway commission for its own use in making up plans and estimates. The information may be used by persons submitting bids, but the highway commission will be in no way responsible for any discrepancies which may be found or for any misunderstanding of true conditions which may arise." This survey was made by the county, not by the highway commission. The latter did not call for bids, or let the contract. But that aside, in the cases hereinbefore cited, like cautionary notices to throw all responsibility upon the bidders were held not to deprive them of the right to rely on positive representations as to conditions contained in the specifications or plans exhibited to them.

The claim made in the oral argument that the survey map was not a part of the plans and specifications of the contract and is not in evidence, cannot be sustained. It was offered by plaintiff, and was treated as received during the whole trial. Its importance to the vital issue in the case does not depend upon its being a part of the contract, but upon the fact that the representations thereon were intended to and did induce defendant to make its bid and execute the contract. Plaintiff cites cases to the proposition that unexpected difficulties encountered in the performance of a contract warrant neither rescission nor extra compensation. Stees v. Leonard, 20 Minn. 448 (494); Snow Mountain Water & Power Co. v.

Kraner, 191 Cal. 312, 216 Pac. 589; London & L. Indemnity Co. v. Columbiana County, 107 Oh. St. 51, 140 N. E. 672; Leary v. Waterliet, 222 N. Y. 337, 118 N. E. 849. None involved the rescission of a contract induced by untrue representations or, which is the same, mutual mistake. In the last cited case the facts are distinguished from those present in Faber v. City of New York, supra.

Language in Nash v. City of St. Paul, 23 Minn. 132, is relied on by plaintiff; but it is to be noted that the action was to recover for extra work wherein it was held that the complaint was demurrable because it disclosed that the alleged extra work was work which, under a proper interpretation of the contract, the plaintiff was required to do for the contract price. And, while the allegation was that the contract was based upon a wrong estimate made by the city engineer, it appeared that such estimate was not a part of the contract, and was not one upon which the plaintiff had a right to rely. It was not an action for rescission, and a demurrer to the complaint was sustained.

Did defendant waive the right to rescind by continuing upon the job after knowledge of the true conditions? We think not. The truth was revealed gradually. A few slabs, boulders or other obstructions might not have been considered of sufficient moment to ask for the rescission of the contract, and because a contractor goes on in spite of encountering conditions which he had a right to believe different, hoping that an adjustment may be had, the conclusion should not be hastily reached that he intended to waive his right to rescind when it does appear, as here, that performance meant a loss to him of over four times the amount of the contract price. Furthermore, under this contract there were provisions to meet extra work, in which event there was to be an agreement as to the price before it was done. The county board did not meet often. A meeting was finally arranged. Defendant presented its claim. From what took place defendant might be justified in proceeding with the work on the promises expressed at the open meeting of the board that an agreement as to price would be reached. The continuance on the job under these circumstances could not be construed by plaintiff to be a waiver or abandonment of the claim

that the contract was induced through untrue representations or mutual mistake. Defendant was continually seeking redress.

Nor can plaintiff on this record urge estoppel. There is no evidence that defendant did any needless work, or that the work done was at a higher cost than plaintiff could have procured it done, or that the latter sustained any loss or disadvantage. In fact, the inference is that what defendant did at the price allowed by the court was done cheaper than the part completed by the Iowa concern employed by the county for that purpose. So there is nothing that could have prejudiced plaintiff by defendant's keeping on after learning the character of the soil to be excavated for the piers.

Plaintiff contends that by continuing the work after knowledge of the untruthfulness of the representation inducing the contract he affirmed it, and cites The Encyclopedia Press Inc. v. Harris, 140 Minn. 145, 167 N. W. 363; Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954. This, of course, is true if the contract is wholly executory when the falsity of the representation is discovered. But this is not such a case. No act of defendant could be construed as an affirmance of the contract, or as an intentional or voluntary waiver of the untrue representation or mutual mistake so as to preclude a court of equity from granting rescission.

In addition to the cases from the Supreme Court of the United States, Long v. Athol, supra, and Faber v. New York City, supra, we think Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476, and Bowen v. O'Brien, 144 Minn. 130, 174 N. W. 736, justify the holding that there was no affirmance of the contract or waiver that should stand in the way of the relief that was granted. There being evidence justifying granting rescission, it was but placing the parties in statu quo to award reasonable compensation to defendant for the work it did.

The two propositions discussed lead to an affirmance, and it is deemed unnecessary to touch upon other findings challenged. There is no dispute as to the amount of recovery in case defendant prevails.

The judgment is affirmed.

STONE, J., took no part.