**Robert J. BURGI, et al., d/b/a Ray Eckes Printing Service, Appellants,**

v.

**Ray ECKES, et al., Respondent.**

**No. C4–83–1697.**

Court of Appeals of Minnesota.

Sept. 4, 1984.

Joel A. Cich, Johnson Law Offices, North Mankato, for appellants.

Timothy D. Moratzka, Moratzka, Dillon & Kunkel, Hastings, for respondent.

Considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ., without oral argument.

## OPINION

RANDALL, Judge.

Robert Burgi, as owner of a printing service purchased from Ray Eckes and tenant of a building owned by Eckes, brought this action to recover damages from Eckes and from the City of North Mankato for the razing of the building the printing service occupied. The claims against the city were dismissed before trial, and after a bench trial, the court entered judgment in favor of landlord Eckes. Burgi appealed. We affirm.

## FACTS

In October 1978 respondent sold his business, the Ray Eckes Printing Service, to appellants. At the same time, they executed a lease for the rental of the premises in which the business was conducted. The lease ran for five years and was renewable for five years at $300.00 per month. Appellants, as tenants, were responsible for minor repairs and maintenance, and respondent, as owner, was responsible for "major or structural repairs." The parties included a provision in the lease for its termination if the building were destroyed by the action of the public authorities. The lease also called for the respondent to pay appellants moving expenses and rent differential in the event of a sale or forced sale of the building requiring relocation of the business. The sale of the printing business and the lease by the buyer of the seller's building were two integral parts of the same transaction, namely, the sale of the printing business.

In April 1981, appellants filed a reorganization proceeding under Chapter 11 of the Bankruptcy Act of 1978, 11 U.S.C. § 1101 et seq. The building lease contained a boiler plate provision which allowed the owner to terminate the lease if the tenant filed bankruptcy. The bankruptcy court did not rule on the effect of that provision, but allowed appellants to elect whether to continue the lease. Their election was to continue the lease. The bankruptcy court ruled, however, that the tenant's purchase agreement for the business, executed at the same time as the lease, was to be treated as an unsecured debt since respondent had not perfected his security interest. The net result was that respondent-landlord was held to the lease, but appellants' obligation to pay for the business in the leased building was reduced to less than one-fourth of the original deferred balance owed respondent.

In May 1982 the City of North Mankato inspected the building and ordered that either repairs costing approximately $50,000 be made or the building be razed, with the cost of razing the building assessed to respondent. Because respondent's income from the building was insufficient to warrant repairing it and because the costs of utilities, taxes, and insurance were steadily increasing, he chose not to make the required repairs and subsequently the building was razed. Appellants relocated their business on October 1, 1982.

## ISSUES

I. Did the action taken by the city amount to a destruction and thus terminate the lease?

II. Was the owner of the building released from his obligation to make major repairs to the building due to impossibility of performance or by tenant's filing of bankruptcy during the term of the lease?

III. Is the clause in the lease allowing the tenant to recover moving expenses

from the owner because of a sale inconsistent with the clause in the sales agreement referring to the recovery of those expenses?

## ANALYSIS

### I.

■ The "Taking for Public Use" clause of the Lease Agreement states:

The tenant further agrees that if the demised premises, or any part thereof, or any part of the improvements or what they form a part, shall be taken for any street or other public use, or shall during the continuance of this Lease be destroyed by the action of the public authorities, then this Lease and the term demised shall thereupon terminate.

Appellants argue that the destruction of the building was not "by the action of the public authorities" since respondent could have avoided the destruction by making the necessary repairs. Since he did not, appellants argue, the razing of the building was done by the city as the respondent's agent. We disagree. The city's actions in ordering the building either razed or repaired and proceeding with the building's destruction when, because of economic impossibility, no repairs were undertaken by respondent, constituted "destruction" by a public authority, and terminated the lease.

### II.

The trial court held that the building owner was relieved of his duty to make "major or structural repairs" either by (a) appellants' anticipatory breach of their agreement implicit in the bankruptcy proceedings, (b) the owner's right to set off his executory obligation to repair against appellants' repudiated executory obligation to pay according to the sales agreement, or (c) by practical economic impossibility. While the trial court erred in holdings (a) and (b), we agree with the trial court on (c) and we therefore affirm.

■ (a) The lease clause allowing respondent to terminate the lease if the tenant petitioned for bankruptcy was valid, since the lease was agreed upon before the effective date of the new Bankruptcy Code and 11 U.S.C. § 365(e)(1), which now invalidates such clauses. *See U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (bankruptcy code will not be used to invalidate property rights retroactively). However, even though valid, the clause merely allowed the owner to terminate the lease upon the tenant petitioning for bankruptcy. It did not automatically terminate the lease. By failing to terminate the lease when he learned of the tenant's bankruptcy, the respondent waived the breach. *See Central Union Trust Co. of New York v. Blank*, 168 Minn. 312, 315, 210 N.W. 34, 35 (1926) (receipt of rent waives prior forfeitures known to lessor). The lease was not, therefore, terminated by appellants' filing for bankruptcy.

■ (b) The owner's duty to make major or structural repairs is an executory provision of the combined lease and sale agreement with the tenant. Tenant's promise to pay the deferred purchase price of the printing business is also an executory provision of the combined lease and sale agreement. The tenant's bankruptcy proceeding resulted in a legal repudiation of almost 75% of his obligation to pay for the printing business. Under 11 U.S.C. § 553, the owner's right of setoff is unaffected by the bankruptcy code; that is, the owner, as a creditor, may offset a mutual debt he owes to the tenant against the tenant's debt to him. Bankruptcy cases interpreting the term "mutual debt" as used in the setoff statute imply that to be subject to setoff, however, "debts" must be what is commonly referred to as "debts." That is, they must be sums certain or easily ascertainable. *See, e.g., In re Arctic Enterprises*, 17 B.R. 839 (Minn.Bkrtcy.1982); *Matter of Fred Sanders Co.*, 33 B.R. 310 (Mich. Bkrptcy.1983). While the owner's obligation to make major or structural repairs to the leased premises is an executory obligation under the lease and sale agreement, it is not a "debt" which may be offset against the tenant's obligation to make deferred payments for the building. Respondent

was thus not excused from his obligation to repair under a setoff theory.

(c) The trial court also found, however, that respondent's duty to make major or structural repairs was suspended because of economic impossibility. We agree. The rent respondent received under the lease was barely enough to pay taxes, insurance, and utilities, and the rest of the building was empty. Any money to pay for major repairs to the building had to come out of payments appellants made under the sales agreement. When, through no fault of the landlord, those payments were diminished to less than one-fourth of the agreed amount, repairing the building became so economically disadvantageous as to be an economic impossibility. *See Powers v. Siats,* 244 Minn. 515, 520, 70 N.W.2d 344, 348 (1955). *Powers* held that, except where impossibility or impracticability of performance is wholly attributable to the subjective inability of the promisor, the performance of a contractual duty may be excused when, due to the existence of a fact or circumstance of which the promisor neither knew nor had reason to know, performance becomes impracticable in the sense that it would cast an excessive or unreasonably burdensome expense upon the promisor. Respondent-landlord Eckes, the promisor, did not cause his own reduction in income, and there was no reason, at the outset of the contract, for him to anticipate that the return on the sale of his business would be reduced by more than three quarters. Requiring respondent now to make the major repairs the building required to avoid destruction would cast an unreasonably burdensome expense on respondent which was totally unanticipated at the time of contracting.

### III.

Both parties agree with the trial court that the lease and the sales agreement are two parts to a single legal transaction and must, therefore, be read together. Appellant, however, claims there is an inconsistency between the two writings which must be resolved by referring to the sales agree-

ment, which was written, rather than the lease, which was a printed form. (While the lease is a printed form, the clause providing for moving expenses was typewritten. The canon of construction that appellant urges us to use is therefore inapplicable even if we were to find the clauses in the two agreements inconsistent.) The specific language in the sales agreement reads:

> This sales agreement includes no sale of real estate. However, since the business that is the subject of this sale is presently located at 442 Belgrade Avenue, North Mankato, Minnesota, Sellers and Buyers have, simultaneously with the acknowledging hereof, *entered into a Lease Agreement providing for continued occupancy of the presently existing location, or, in lieu thereof, moving expense and rental differential, if any, for comparable facilities in the event of a forced removal within a time specified therein.* A copy of said lease agreement appears as Exhibit A attached hereto and made a part hereof by reference (emphasis added).

The language in the lease which appellant claims is inconsistent with the preceding paragraph states:

> Tenant acknowledges that the premises that is the subject of this lease agreement is for sale. *In the event of a sale of the premises forcing a relocation by the tenant during the term of the five (5) year period, that lessor will provide reasonable moving costs, and the rental differential for a premises of comparable quality* (emphasis added).

Terms in a contract should be read together and harmonized where possible. *Country Club Oil Co. v. Lee,* 239 Minn. 148, 151–2, 58 N.W.2d 247, 249 (1953); *see also Anderson v. Kammeier,* 262 N.W.2d 366, 370, n. 2 (Minn.1977) (contracts in several writings construed with reference to each other). In light of that principle, these two provisions are not inconsistent, since the typewritten sales agreement specifically refers to the lease provision as governing. In the language

referring to the moving expenses and rental differential to be paid the tenant, the sales agreement is clearly describing the terms set forth in the lease, not setting forth new terms itself.

■ This finding that the clauses are not inconsistent is also in line with the rule of construction that the specific in a writing governs over the general. There are separate specific provisions made for the event of the sale of the building and for the event of the destruction of the building by public authorities. Those specific provisions take precedence over the general term "forced removal," which does not specify the cause of the removal. In determining whether appellant was entitled to recover moving expenses or a rental differential from respondent, the proper place to look is the lease clause which provides for such expenses only in the event of the *sale* of the premises. The removal forced on tenant by the actions of the City of North Mankato was neither a sale nor a forced sale and thus does not trigger tenant's right to recover moving expenses from landlord. The general term "forced removal" used in the sales agreement must be interpreted together with the lease, not apart from it, to construe this contract.

## DECISION

The lease between respondent and appellants was terminated by the city's order that the building be razed. Respondent had no obligation to pay appellants' moving expenses or a rent differential.

Affirmed.