In re William Robert LUFSKY, Jr.

No. CX–86–455.

Court of Appeals of Minnesota.

June 10, 1986.

Pamela Dais, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for appellant.

Janice Wheat, Asst. Anoka Co. Atty., Anoka, for respondent.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Lufsky appeals his commitment to Minnesota Security Hospital as a mentally ill and dangerous person.

We affirm.

## FACTS

Lufsky has been repeatedly hospitalized for psychiatric treatments since 1971. His October 1985 commitment to the Minnesota Security Hospital as a mentally ill person was affirmed by this court. *In Re Lufsky*, 379 N.W.2d 255 (Minn.Ct.App.1986). That commitment was precipitated by Lufsky's violent attack upon his parents, which included wrapping an electrical cord around his father's neck and dragging him from the house.

Lufsky was discharged, without specific housing placement, on December 23, 1985. Police were called to the home of Lufsky's parents on January 4 when his mother reported he had become violent. Lufsky was arrested and charged with assault. He was released from custody on January 16, after pleading guilty to a reduced charge of disturbing the peace. Lufsky was placed on probation on condition he reside at Country Meadows, a licensed board and care facility, take prescribed medications, continue psychiatric treatment, and not commit further assaults.

On January 17 and again on January 23 Lufsky left Country Meadows without permission. On one occasion he appeared at the home of Gwen Ross at 3:30 a.m. Ross telephoned Ross Eggestein, the director of Country Meadows, to pick up Lufsky. Gwen Ross told Eggestein she was afraid of Lufsky's reaction if she called the police and that Lufsky was threatening to kill his parents. During this same period at Country Meadows, Lufsky's mother asked Eggestein to check on her, since she was afraid Lufsky might leave Country Meadows. Eggestein returned Lufsky to Country Meadows for the second time on January 24.

On January 25 Lufsky was again arrested by police. During dinner, Country Meadows residents saw Lufsky repeatedly slap the 15 year old son of the facility's cook. When residents tried to persuade Lufsky to stop, he threatened to "paint" an 86 year old resident with a nearby hot bowl of soup, and to wrap a phone cord around the neck of another resident, who was in his 70s. The boy suffered a black eye and was obviously upset by the attack.

Police apprehended Lufsky later that day. He was charged with assault and held in the Wright County jail until February 5, when he was transferred to the Minnesota Security Hospital at St. Peter. Sheriff's deputy Donald Wilson, who transported Lufsky to the security hospital, described Lufsky as one of the most dangerous people he had transported. Lufsky told Wilson the 15 year old boy had "jumped into his face," that he had "punk slapped" the boy, and that the incident was "no big deal." Lufsky expressed interest in a "shoot-out" with the officers who had arrested him.

Lufsky testified at the commitment hearing and admitted repeatedly slapping the 15 year old boy at Country Meadows and going to the home of Gwen Ross about 3:30

in the morning. Lufsky denied threatening other residents at Country Meadows and testified he does not require hospitalization.

The court-appointed examiner was licensed consulting psychologist James Gilbertson. Dr. Gilbertson had examined Lufsky for previous commitment proceedings. He testified Lufsky remained mentally ill and constituted a danger to the public. Gilbertson described Lufsky's inability to control his frustrations, irritability, and impulses. Although medications help to slow down Lufsky's rapid mood swings, Gilbertson told the court Lufsky would not take medications if released. Gilbertson described Lufsky as a very strong man with almost no ability to limit his aggressive behavior when angry or frustrated. Based in part on Lufsky's past behavior, Gilbertson concluded there is a substantial likelihood Lufsky will engage in future conduct capable of inflicting serious physical harm on others.

Roy Newcomb is an Anoka County social worker who has known Lufsky and his family for at least three years. Newcomb petitioned for Lufsky's commitment as a mentally ill and dangerous person. He explained that Lufsky's repeated violence made community placement at a halfway house or private hospital inappropriate. The Anoka State Hospital had also refused to accept Lufsky, even temporarily pending trial on the petition. If Lufsky returned home to his parents, Newcomb foresaw a very high risk of further assaults on the parents.

The trial court committed Lufsky to the Minnesota Security Hospital as a mentally ill and dangerous person after finding he posed a clear danger to the safety of others. Lufsky appeals, claiming it was not established by clear and convincing evidence that he is mentally ill and dangerous.

## ISSUE

Did the trial court err by finding Lufsky was a mentally ill and dangerous person as defined by Minn.Stat. § 253B.02, subd. 17 (1984)?

## ANALYSIS

A "person mentally ill and dangerous to the public" is a person (a) who is mentally ill; and (b) who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another.

Minn.Stat. § 253B.02, subd. 17 (1984). The trial court's findings on the petition must be based upon clear and convincing evidence. Minn.Stat. § 253B.09 (1984). On appeal, this court will review the findings of the trial court, but may reverse only if the findings are clearly erroneous. Minn. R.Civ.P. 52.01.

Lufsky concedes there was clear and convincing evidence that he is a mentally ill person. He focuses his argument on whether he has caused or will cause *serious* physical harm to another.

■ There is no statutory definition of "serious" in the Commitment Act. Appellant urges analogy to the criminal definition of "great bodily harm." Minn.Stat. § 609.02, subd. 8 (1984) defines great bodily harm as injury creating a high probability of death or causing serious permanent disfigurement, permanent loss or impairment of a bodily member or organ, "or other serious bodily harm." While we decline to view the criminal definition of the term "great bodily harm" as determinative of the meaning of the civil commitment term "serious physical harm," we note the criminal definition includes "other serious bodily harm" without explaining the word "serious."

The trial court referred to the criminal definition of "substantial bodily harm," which includes injuries which cause temporary and substantial disfigurement, loss or impairment of a bodily member, and fractures. Minn.Stat. § 609.02, subd. 7a (1984).

When words within a statute are not explicitly defined, they must be construed "according to their common and approved usage[.]" Minn.Stat. § 645.08(1) (1984). We are persuaded that the common understanding of the term serious is sufficient and that reference need not be made to the criminal statutes.

The trial court found that Lufsky presents a clear danger to the safety of others. That finding is amply supported by the record. Dangerousness may be demonstrated by past conduct together with a determination the person is likely to engage in future violent conduct. Lufsky's dangerousness has been demonstrated by past outbursts and threats to kill his parents, the assault at Country Meadows, threats to burn and strangle elderly residents, and invitations to "shoot it out" with police. Overt acts by Lufsky which are revealed in the record indicate he has caused or attempted to cause serious physical harm to others in the past.

The conclusions of the court-appointed examiner and sheriff's deputy that Lufsky is a dangerous person support the trial court's findings. In light of Lufsky's past conduct and the testimony presented at the hearing, on the petition, the trial court's finding that there is a substantial likelihood that Lufsky will engage in acts capable of inflicting serious physical harm on others in the future is also not clearly erroneous.

### DECISION
The trial court properly committed Lufsky to the security hospital as a mentally ill and dangerous person.

Affirmed.