**In the Matter of Donald PETERSON.**

No. C7–86–1546.

Court of Appeals of Minnesota.

Dec. 2, 1986.

John Myron Lund, Minneapolis, for appellant Donald Peterson.

Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Considered and decided by POPOVICH, C.J., and PARKER, and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Donald Peterson was found incompetent to proceed to trial on a criminal indictment charging him with murder in the first degree and was referred to the mental health division of the trial court for commitment proceedings in June, 1986. Appellant was found mentally ill and dangerous in July, and the mental health division refused to re-examine the issue of competency. After a review hearing in September, the mental health division found appellant continued to be mentally ill and dangerous and directed indeterminate commitment. This appeal, challenging the sufficiency of the evidence and the refusal to re-examine competency, followed. We affirm.

## FACTS

Donald Peterson admits killing his roommate in December, 1985. The roommate was shot with a sawed-off shotgun, and his body was dragged by Peterson to the front of their house, where Peterson propped it up on a snowbank. Peterson claims he is an agent for the United States Government, available for special missions as assigned by the Secret Service, CIA, FBI, and National Security Agency. He claims to have killed in the line of duty and expresses a commitment to kill again if necessary.

Peterson became convinced his roommate was spraying him with a colorless, tasteless, and odorless mist to help him forget the details of his last mission and was monitoring him for signs of readiness for a new assignment. Peterson believes he was to kill the roommate to show his readiness and expressed surprise that the government did not pick up the body before the police came.

Peterson refused to follow the advice of defense counsel that he plead not guilty by reason of mental illness and continues to claim the government will come forward to verify his account as soon as his trial for murder is publicized. The criminal division of the district court directed that an evaluation of Peterson's competency be performed.

Psychiatrist Carl Malmquist reported that Peterson suffers from a paranoid disorder characterized by an extensive delusional system which would limit his participation in presenting any defense. Counsel would be forced to adopt Peterson's delusional view of the killing to work with him. The trial court concluded Peterson's mental illness rendered him incompetent to proceed and referred him to the mental health division for commitment. In the event of commitment, the criminal court ordered the treating facility to evaluate and report on Peterson's competency every six months.

A hearing was held on the petition for commitment on July 3, 1986. Sergeant Robert Nelson of the Homicide Division of the Minneapolis Police Department investigated the killing and took a statement from Peterson in which Peterson described his actions and admitted shooting his roommate. The court-appointed examiner, psychiatrist Sharon Satterfield, testified that Peterson suffered from a paranoid disorder or paranoid schizophrenia. She said there was no doubt about Peterson's mental illness, although it did not fit textbook definitions of either a paranoid disorder or paranoid schizophrenia. She indicated the mental illness causes a substantial disorder of Peterson's thoughts and perceptions, causes some disruption of his memory, and grossly impairs his judgment, behavior, and ability to recognize reality. Satterfield

described Peterson's extensive delusional system and concluded he presented a clear danger to the safety of others. In light of Peterson's admission that he killed his roommate and his complete denial of any mental illness, Satterfield recommended involuntary commitment to a secure facility.

Peterson testified he understood the criminal charges pending against him and wanted to go to trial. His counsel argued the court should find Peterson competent and refer him back to the criminal division for trial. The mental health division concluded the sole issue before it was whether Peterson should be committed. The issue of competency was for the criminal division to determine. The court found Peterson to be mentally ill and dangerous and directed his commitment to the Minnesota Security Hospital at St. Peter.

Psychologist Douglas Fox reported Peterson was evaluated at the security hospital and diagnosed as experiencing a paranoid disorder revolving around a well organized delusional system of secret government employment. Although Peterson understood the criminal charges, the report of the security hospital recommended that he be committed as mentally ill and dangerous, since his delusions continued to prevent any meaningful participation in his defense.

A review hearing was held pursuant to statute on September 2, 1986. Fox testified Peterson had been transferred to the security hospital's most secure and highly staffed ward after he hit another patient, knocking him unconscious. Fox described Peterson's continuing delusions as (a) his belief that he was required to kill others as part of his employment as a secret agent, (b) the spraying of mist to reduce his memory of past missions, and (c) a belief that he still is an agent and the government will eventually acknowledge him. Peterson had refused to identify to hospital staff which agency he worked for, claiming that information was top secret, but at the review hearing he testified he did not work for a single agency, but was on-call for all government security agencies.

Peterson testified he wanted to go to trial to have his status as a special agent known and to obtain publicity on his willingness "to divulge certain information" to prove his status. He testified the government would be concerned he had not made his yearly contact in July and would come looking for him, although he confirmed that no one had yet come forward to verify his story.

The mental health division of the trial court ordered Peterson's commitment as a mentally ill and dangerous person continued indeterminately, and Peterson appeals.

## ISSUES

1. Are the findings that Peterson is a mentally ill and dangerous person supported by the record?

2. Did the mental health division of the trial court err by concluding the issue of competency is for the criminal division to determine?

## ANALYSIS

### I.

■ A mentally ill and dangerous person may be committed for an indeterminate period. Minn.Stat. § 253B.18, subd. 3 (1984). Both elements are defined by statute. A "mentally ill person" suffers from a substantial psychiatric disorder which grossly impairs his judgment, behavior, recognition of reality, or reasoning and understanding, and the disorder is manifested by grossly disturbed behavior or faulty perceptions. Minn.Stat. § 253B.02, subd. 13. Although the general statutory definition of a mentally ill person includes a risk of harm to the proposed patient or others, the elements required for a "person mentally ill and dangerous to the public" are more specific. In addition to being mentally ill, the proposed patient must present "a clear danger to the safety of others as demonstrated by" past acts or attempts at serious physical harm to others and "a substantial likelihood that the person will engage in acts capable of inflicting

serious physical harm on another." *Id.*, subd. 17.

The trial court must find the elements of the statutory definition have been shown "by clear and convincing evidence." Minn. Stat. § 253B.18, subd. 1. The factual findings will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

Peterson argues he is neither mentally ill nor dangerous. The mental health professionals testified the most prominent feature of Peterson's mental illness is his delusional system. Peterson argues that no one has proved he does *not* work for the government. We have carefully reviewed the record and can only conclude the trial court's findings that Peterson suffers from delusions and is a mentally ill person are amply supported.

Peterson further argues that he cannot be dangerous to the public, since he still has to face criminal charges before he can be released if the commitment proceedings are dismissed. He argues he will either be convicted, in which case he would be imprisoned and removed from society, or he will be acquitted by reason of mental illness, in which case he would be committed. Either way, Peterson argues he will pose no danger to the public. We do not find this argument persuasive. Peterson admits killing his roommate and expressed his willingness to kill again to carry out his secret missions. He has assaulted a patient while hospitalized and is described as a serious threat to others. *See In re Gould*, 364 N.W.2d 453 (Minn.Ct.App.1985) (threats and continued paranoid beliefs sufficient to support finding patient continued to be mentally ill and dangerous). The findings that Peterson was dangerous when originally committed and continued to be dangerous at the time of the review hearing are not clearly erroneous.

**II.**

If a criminal defendant is found "to be incapable of understanding the proceedings against him or participating in his defense" the defendant is referred for commitment. Minn.R.Crim.P. 20.01, subd.

4(2)a. The resulting commitment is subject to the supervision of the criminal court. *Id.* The head of the treating facility must "report periodically to the trial court, at such times as the court shall provide, on the defendant's mental condition with an opinion as to his competency to proceed." *Id.*, subd. 5. The prosecuting attorney and defense counsel also receive these reports.

> When the court on application of the prosecuting attorney, defense counsel, the defendant, [the treating facility] or on the court's own motion, determines, after a hearing with notice to the parties, that the defendant is competent to proceed, the criminal proceedings against the defendant shall be resumed.

*Id.*

Appellant argues the *mental health division* of the trial court was authorized to review the issue of his competency. The trial court properly held that issue was not before it. Appellant has misinterpreted the procedure established by the rules of criminal procedure. A defendant may be referred for civil commitment proceedings, but it is the criminal court which determines competency. The provisions regarding competency appear in the criminal rules, focus on a defendant's ability to understand and participate in criminal proceedings, and require notice to the trial court that originally made the finding of incompetency, in addition to the prosecutor and defense counsel.

In this case, the order referring the matter also made it clear the criminal court would retain jurisdiction on the competency issue. As a practical matter, the criminal division found Peterson incompetent on June 23 and there was no compelling reason to re-examine that issue at the hearing on the competency petition on July 3, just one week later. The criminal division referred Peterson for commitment proceedings, and its order directed that reports of the periodic evaluations on Peterson's competency be filed with "this court." The order prohibited Peterson's release "until further order of this court or the * * * Mental Health Division." The order deter-

mining incompetency reserved for the criminal division any further decision on that issue and specifically referred the matter to the mental health division only for "a hearing to determine whether the said defendant is mentally ill or mentally ill and dangerous so as to be in need of inpatient hospitalization, care and treatment[.]" The issue of competency was not properly raised in the commitment proceeding.

## DECISION

The trial court properly committed Peterson as a mentally ill and dangerous person for an indeterminate period. The issue of Peterson's competency to proceed to trial is for the criminal division of the trial court to determine.

Affirmed.