In the Matter of Thor
Kenneth MINER.

No. C2–87–1142.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Gregory R. Solum, Edina, for appellant Thor Kenneth Miner.

Thomas L. Johnson, Hennepin Co. Atty., James R. Albrecht, Donna C. Falk, Asst. Co. Attys., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant was indicted for murdering his father. The district court referred the matter to the mental health division and stayed further criminal proceedings. This appeal was taken from a May 13, 1987 order committing appellant, as a mentally ill and dan-

gerous person, to the Minnesota Security Hospital. We reverse and remand.

## FACTS

Thor Miner called the 911 emergency system on November 26, 1986, seeking an officer and an ambulance. Police discovered Andrew Miner, Thor Miner's father, dead of two gunshot wounds, a loaded semi-automatic rifle, additional ammunition, and a hunting knife when they arrived at the family home. Thor Miner was taken into custody and eventually indicted for murder.

Psychiatrist Carl Malmquist, who was ordered by the district court to examine Miner, questioned Miner's competency to proceed to trial in a report to that court, but did not make a specific recommendation on the issue. On April 20, the criminal division of the district court (hereinafter the criminal division) issued its findings, conclusions, and "order including petition for judicial commitment." The matter was referred to the mental health division and criminal proceedings were stayed.

Licensed consulting psychologist Paul Boerger was appointed to examine Miner and his report diagnosed Miner to be suffering from paranoid schizophrenia. At the hearing in the mental health division, Dr. Boerger testified the psychosis was characterized by disordered thoughts, moods, perceptions, and memory. As a result, Miner's judgment, behavior, and his capacity to recognize reality, reason and understand was grossly impaired. Dr. Boerger recommended extended hospitalization in a secure facility with additional evaluation to determine what treatment is appropriate. The first priority for any placement, he said, should be to protect the safety of the community and those near Miner.

Dr. Boerger questioned whether Miner actually understood the criminal process since, despite his claimed knowledge of the proceedings, he claimed he did not need an attorney to assist him. Boerger believed Miner would, if released, pose a threat of physical harm to others. Because Miner's paranoid ideation involves an inability to deal with "all that one would normally consider to be threatening or negative," Boerger testified Miner may not pose a threat in a "day or two[,] but over time I think that he would."

Dr. Carl Schwartz, a psychiatrist, was appointed second examiner at Miner's request. Dr. Schwartz agreed that Miner was psychotic and suffering from schizophrenia. Schwartz concluded there was no imminent danger to others now that Miner's father, his "primary delusional enemy," was dead. However, Schwartz's report warned that Miner could become suicidal.

At the commitment hearing, Dr. Schwartz testified that Miner understood the pending criminal proceedings, could participate in the preparation of his defense, and was competent and willing to stand trial.

Miner's counsel argued at the close of the hearing that the court should find that Miner was competent and return him for trial on the criminal charge. In the alternative, counsel argued that Miner was not dangerous and should not be committed as a mentally ill and dangerous person. The county attorney agreed that Miner was competent and should stand trial. In the alternative, he argued the evidence clearly established that Miner was dangerous and unpredictable and should therefore be committed.

The trial court announced that he would find Miner to be competent if the issue was before him, but he understood that competency was for the criminal division to decide, while only the petition for commitment was before the mental health division. The trial court found that Miner understood "his situation and his rights and [was] competent to stand trial * * *." Nevertheless, on the evidence, the mental health division concluded Miner was clearly mentally ill and it was likely that his delusions could focus on another imagined enemy and cause him to harm someone. Miner was committed to the Minnesota Security Hospital as a mentally ill and dangerous person and he appeals that decision.

## ISSUE

Did the mental health division err by not ruling that Miner was competent and returning him for trial on pending criminal charges?

## ANALYSIS

If an individual is, as a result of mental illness, "incapable of understanding the proceedings or participating in his defense[,]" he cannot be tried or sentenced. Minn.R.Crim.P. 20.01, subd. 1. The trial court in which criminal proceedings are pending must suspend those proceedings and order an examination whenever it determines "there is reason to doubt the defendant's competency." *Id.*, subd. 2. After receiving the report of an examiner, the trial court must "determine the defendant's competency to proceed." *Id.*, subd. 3.

■ The examiner's report, which forms the basis for the competency decision, must be made part of the record and the trial court must make "an explicit finding" on competency. *State v. Swain*, 269 N.W.2d 707, 719 (Minn.1978). Obviously, if a defendant is found to be competent, criminal proceedings will go forward. If the defendant is found to be "mentally ill so as to be incapable of understanding the proceedings against him or participating in his defense," the court "shall order" commitment continued if the defendant is already subject to a commitment order, or "shall cause civil commitment proceedings to be instituted against him" if he is not. Minn. R.Crim.P. 20.01, subd. 4(2)(a).

The treating facility must make periodic reports to the court before which the criminal proceedings were pending "on the defendant's mental condition with an opinion as to his competency to proceed." *Id.*, subd. 5. Criminal proceedings "shall be resumed" after a determination has been made "that the defendant is competent to proceed." *Id.*

Both counsel in this case believed the issue of competency was for the mental health division to determine, and this was apparently the intent of the criminal division's April 20 "Findings of Fact[,] Conclusions of Law[,] and Order Including Petition for Judicial Commitment." This appeal was not taken from that order and we do not have the criminal file before us. However, the order found that Miner "may be suffering a major mental illness * * *."

The mental health division was ordered to "hold a hearing to determine whether the said Defendant is then and there *incompetent to stand trial* and whether the Defendant is so mentally ill and/or mentally ill and dangerous as to be in need of inpatient hospitalization, care and treatment * * *." (Emphasis added). If the mental health division found that Miner was *not* "mentally ill and/or mentally ill and dangerous and in need of hospitalization, care and treatment," Miner was to "be referred to secure custody back to [the criminal division] for further proceedings * * *." Criminal proceedings were explicitly stayed only until Miner "has returned to a competent state of mind * * *."

■ Although the supreme court has stressed the need for an explicit ruling on competency, *see Swain*, 269 N.W.2d at 719, the criminal division in this case made no such finding. Instead, the matter was referred for the mental health division to determine, although referral is generally appropriate only *after* a determination of incompetency has been made. Minn.R. Crim.P. 20.01, subd. 4(2)(a). The issue of competency is not generally for the mental health division to determine after such a referral. *In re Peterson*, 396 N.W.2d 858, 861 (Minn.Ct.App.1986). However, the criminal division in this case did direct the mental health division to hold a hearing and make a determination on competency.

The mental health division focused on the commitment petition, rather than on competency, although evidence was also introduced on the issue of competency. In fact, the mental health division made a finding that Miner is competent to stand trial, but that finding is not reflected in any conclusion of law. The parties informed this court at oral argument that trial has now been scheduled on the criminal charges, despite the lack of a formal ruling on competency.

## DECISION

The criminal division should have made an explicit ruling on competency to stand trial, but referred the issue of competency to the mental health division, which erred in committing Miner after it found he was competent to stand trial. The commitment order is reversed and the matter is remanded for entry of an order finding Miner to be competent and referring him back to the criminal division for trial. The mental health division is not required to hold an additional hearing, and may rely upon its prior finding of fact when formulating a new conclusion of law regarding competency.

Reversed and remanded.