**In the Matter of Thor Kenneth MINER.**

**No. C7–88–630.**

Court of Appeals of Minnesota.

June 7, 1988.

Review Denied July 28, 1988.

Gregory R. Solum, Edina, for appellant Thor Miner.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Coleen M. Brady, Asst. Co. Atty., Minneapolis, for respondents.

Heard, considered and decided by WOZNIAK, C.J., and PARKER and FORSBERG, JJ.

## OPINION

PARKER, Judge.

Thor Miner appeals from an order committing him as mentally ill and dangerous. We affirm.

## FACTS

On December 10, 1986, Thor Miner was indicted for killing his father. Miner pled not guilty and not guilty by reason of mental illness; the criminal court referred the matter to the mental health division for a hearing on whether Miner was competent to stand trial and whether he was mentally ill or mentally ill and dangerous to the public.

After a hearing the mental health division found Miner competent, but ordered him committed as mentally ill and dangerous. On appeal we remanded to the mental health division and directed entry of an order finding Miner competent to stand trial in the criminal proceedings. *In Re Miner*, 411 N.W.2d 525 (Minn.Ct.App.1987).

On October 16, 1987, the criminal division held a second hearing on Miner's competence. This hearing was requested by Miner's counsel. The court found that Miner was not competent and referred him to the mental health division for commitment proceedings.

On February 19, 1988, the mental health division issued an order committing Miner as mentally ill and dangerous. Miner appeals from that order.

## ISSUES

1. Did the mental health division err by failing to reconsider the question of Miner's competency?

2. Was Miner denied due process of law and the effective assistance of counsel in the competency proceedings?

3. Was the court-appointed examiner qualified to offer an opinion on Miner's mental illness?

4. Did the mental health division improperly consider transcripts of doctors' testimony in prior proceedings?

5. Does the record sufficiently establish that Miner is mentally ill and dangerous?

6. Did the mental health division err in determining that the Minnesota Security Hospital was the least restrictive placement alternative?

## DISCUSSION

### I

■ Miner claims he was improperly denied the opportunity to present evidence of his competency during the commitment proceedings. We addressed this issue in *Matter of Peterson*, 396 N.W.2d 858, 861 (Minn.Ct.App.1986):

Appellant argues the *mental health division* of the trial court was authorized to review the issue of his competency. The trial court properly held that issue was not before it. Appellant has misinterpreted the procedure established by the rules of criminal procedure. A defendant may be referred for civil commitment proceedings, but it is the criminal court which determines competency.

*Id.* at 861 (emphasis in original). Therefore, according to our ruling in *Matter of Peterson*, the mental health division properly refused to consider the issue of Miner's competence.

### II

■ Miner claims he was denied due process and the effective assistance of counsel because his public defender, against his wishes, argued he was incompetent. This claim would have been properly raised in an appeal from the competency proceedings in the criminal division. *See id.*; Minn.R.Crim.P. 28.02, subd. 2(2)2. Miner's present appeal is taken only from the commitment order entered by the mental health division.

Miner's claim that his counsel acted contrary to his wishes during the competency proceedings involves an issue outside the scope of the commitment proceedings and outside the scope of this appeal.

### III

■ Miner argues that the court improperly received the testimony of Dr. Hildegard Graber, the court-appointed examiner. Miner claims Dr. Graber was not a proper "examiner" as defined in the Minnesota Commitment Act:

"Examiner" means a licensed physician or a licensed consulting psychologist,

knowledgeable, trained and practicing in the diagnosis and treatment of the alleged impairment.

Minn.Stat. § 253B.02, subd. 7 (1986).

Dr. Graber testified that in a limited way, her practice included the care, diagnosis, evaluation or treatment of mentally ill persons. She stated:

I do not have an active medical practice now but am involved in the evaluation, assessment and formulation of treatment plans of patients who are mentally ill and dangerous.

At oral argument, counsel for the state said it was her understanding that Dr. Graber was still a board-certified psychiatrist, had for many years practiced full-time in Minnesota, and only recently had partially retired.

We stated in *In Re Harhut*, 367 N.W.2d 628 (Minn.Ct.App.1985):

Respondent's objections to the testimony were overruled with the observation by the trial court that the objections were more pertinent to the weight to be afforded the testimony than to its admissibility. We agree. The sufficiency of the foundation to qualify a witness as an expert is almost entirely within the trial court's discretion.

*Id.* at 632. Accordingly, the trial court cannot be said to have erred in holding Dr. Graber to be a proper "examiner" within the meaning of the Minnesota Commitment Act.

## IV

■ Miner challenges the court's decision to consider the testimony of Dr. Dennis Philander and Dr. Carl Malmquist, received at the prior competency hearing. Miner objected to the testimony as hearsay.

The mental health division did not address Miner's hearsay objection, but took judicial notice of the doctors' testimony contained in the criminal court file.

Minn.R.Evid. 201(b) allows the court to take judicial notice of adjudicative facts:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Our supreme court has approved judicial notice of trial court files in related matters. In *Matter of Welfare of Clausen*, 289 N.W. 2d 153 (Minn.1980), which involved a parental termination proceeding, a trial court had taken judicial notice of files and records from juvenile and criminal divisions of its jurisdiction. The supreme court affirmed, reasoning:

The function of judicial notice is to expedite litigation by eliminating the cost or delay of proving readily verifiable facts. Judicial notice of records from the court in which a judge sits would appear to greatly serve this function and satisfy the requirement of Rule 201(b)(2).

*Id.* at 157 (citation omitted).

To require two divisions of the same court to try the same issue would involve an unneccessary waste of judicial resources. It was therefore proper for the mental health division to take judicial notice of the doctors' testimony in the prior competency proceedings.

## V

Miner challenges the court's determination that he is mentally ill and dangerous. On appeal the court's findings must be upheld unless they are clearly erroneous. *In Re Moll*, 347 N.W.2d 67, 69 (Minn.Ct. App.1984) (citing *Johnson v. Noot*, 323 N.W.2d 724, 728 (Minn.1982)).

The Minnesota legislature has defined a "mentally ill person" as

any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to self or others as demonstrated by (i) a recent attempt or threat to physically harm self or others, or (ii) a failure to

814

obtain necessary food, clothing, shelter or medical care, as a result of the impairment.

Minn.Stat. § 253B.02, subd. 13 (1986).

■ At the competency hearing Dr. Malmquist testified that in his opinion Miner was mentally ill and that Miner's denial of the killing of his father was an inherent part of his mental illness. Dr. Malmquist characterized Miner's thinking as "delusional" and found it to be the result of a projection device.

Dr. Philander agreed with Dr. Malmquist that Miner's beliefs were delusional, that Miner was presently mentally ill, and that his denial of his father's killing seemed to be a significant part of the mental illness.

Dr. Alberg believed Miner's memory was distorted, if not deluded, about his life and how he functioned growing up, that his affect was blunted, and that his mood was affected. Dr. Alberg stated:

Well, most of his symptoms aren't real obvious. He's not floridly psychotic. He isn't actively hallucinating * * * most of it's much more subtle and part of it, I think, is probably confounded by the fact that he's really quite an intelligent person and so he's able to work on what his responses are and mask some of his symptoms.

Dr. Farnsworth diagnosed Miner as schizophrenic, residual type, and allowed the possibility that the schizophrenia was in remission. On cross-examination Dr. Farnsworth testified that Miner had a disorder of thought, but not of mood, perception, orientation or memory.

Dr. Graber's diagnosis of Miner was schizophrenia, paranoid type, chronic. She testified that she believed Miner was actively psychotic and that Miner's mental illness caused a substantial psychiatric disorder of thought, mood and perception, and possibly memory. She further stated that Miner's mental illness caused a gross impairment of his capacity to recognize reality and his ability to reason or understand.

This testimony, as a whole, supports the court's determination that Miner is mentally ill.

The definition of a person "mentally ill and dangerous to the public" also requires that Miner present a "clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another, and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another." Minn.Stat. § 253B.02, subd. 17 (1986). Miner claims the evidence of dangerousness was insufficient to meet the statutory definition.

The record reveals sufficient evidence that Miner has engaged in an overt act causing or attempting to cause serious physical harm to another. A cassette tape offered into evidence contains Miner's admission to a 911 telephone operator that he killed his father. The court therefore could find by clear and convincing evidence that Miner engaged in an overt act causing serious physical harm to his father.

The court found:

12. If the respondent were not receiving treatment in a secure setting, the symptoms of his mental illness would become more florid and there is a substantial likelihood that the surviving members of the conspiracy (which is the product of respondent's mental illness) would then be placed at risk of attack by respondent in view of his actions against his father whom he identified as part of that conspiracy sometime before the murder.

The record supports this finding. Dr. Alberg testified to a possibility that Miner could transfer his delusions toward his father to other family members. Dr. Alberg stated that if he were to assume Miner killed his father, then he would say Miner was dangerous. This testimony supports the court's finding of a substantial likelihood that Miner will engage in further dangerous acts.

VI

■ The mental health division committed Miner to the Minnesota Security Hospital. While the court did not make a specif-

ic finding that the security hospital was the least restrictive alternative available, the court supported its choice of facility by stating that if Miner were not receiving treatment in a secure setting, his symptoms would become more florid and there would be a possibility that other members of the "conspiracy" would be placed at risk.

Dr. Graber testified in favor of placement at the Minnesota Security Hospital, stating that it was preferable that Miner be in the security hospital until some conclusion could be reached about the criminal charges against him. Dr. Graber's testimony supports the court's decision to commit Miner to the Minnesota Security Hospital.

At oral argument Miner's counsel raised the claim that his hearing on the commitment petition was not held within 14 days of the date of filing of the petition. *See* Minn.Stat. § 253B.08, subd. 1 (1986). This issue was not raised in Miner's brief or statement of the case and was therefore waived.

## DECISION

Affirmed.