**In the Matter of Wayne Allen GRAFSTROM.**

**No. C1–92–756.**

Court of Appeals of Minnesota.

Sept. 15, 1992.

Randall D.B. Tigue, Minneapolis, for appellant Grafstrom.

Martin Berg, Roseau County Atty., Roseau, for petitioner.

Considered and decided by DAVIES, P.J., and LANSING, and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant was initially committed as mentally ill and dangerous. After a review hearing, the trial court committed him for an indeterminate period as mentally ill and dangerous. On appeal, Grafstrom alleges deprivation of his statutory and due process rights because the petition failed to properly inform him that the commitment was for being mentally ill and dangerous. We affirm in part, reverse in part, and remand.

## FACTS

A petition for judicial commitment of appellant, filled out by Police Chief Curt Haugen, was filed with the district court. Near the top, underneath a line for the proposed patient's name, was the following:

Alleged (Mentally Ill) (Mentally Retarded) (Chemically Dependent)

"Mentally retarded" and "chemically dependent" were crossed out, leaving "Alleged (Mentally Ill)." Likewise, in paragraph seven, the form stated:

"That the Respondent is believed to be (mentally ill) (chemically dependent) (mentally retarded) because of the following behavior:

Again, chemically dependent and mentally retarded were crossed out. Thus, on the face of the front page, it appears the petition was for commitment as mentally ill.

A narrative describing the behavior causing petitioner to believe appellant was mentally ill was typed underneath paragraph seven, with a parenthetical on the bottom of the page indicating it was continued on the reverse side. On the reverse side, the narrative was one half page long, typed and single-spaced. It stated in part that Dr. James O'Toole believed the patient "is currently mentally ill and dangerous." In the final sentence, petitioner stated the patient "should be considered mentally ill and dangerous."

The original petition which was filed with the court was a one-page document. Also filed with the court was an affidavit of service, indicating that Dr. Scott Bentson served appellant with the petition and attachments by giving him a true and correct copy. Attached to the affidavit of service was a copy of the documents served, including a two-page copy of the front and back of the petition.

Appellant asserts that he did not appear at the initial hearing because he believed the petition was for commitment only as mentally ill, not as mentally ill and dangerous. He claims he did not receive the second page of the petition.

The trial court issued findings, which initially state that the petition alleged appellant was mentally ill. The findings also noted that it permitted appellant to be absent from the hearing, because he refused to attend, and that a deputy informed the court that prior to the hearing appellant was fully awake and did not appear to be drugged.

The trial court found that appellant was diagnosed with schizophrenia, paranoid type. The basis for a determination of dangerousness included threats to the sheriff with a shotgun and knife, in which appellant had to be removed from his home using tear gas, and an incident in which appellant grabbed his mother around the throat and stated "see how easy it would be to kill you." The trial court committed appellant to the Minnesota Security Hospital as mentally ill and dangerous.

Appellant then moved to vacate or modify the order of commitment on the grounds that his due process rights were violated, because the petition did not provide notice that the petitioner sought his commitment as mentally ill and dangerous.

A review hearing was held on whether to continue appellant's commitment as mentally ill and dangerous. At the same time, appellant's motion was heard. Appellant testified he had not received the second page of the petition for judicial commitment. Appellant also introduced into evidence his copy of the initial commitment order. He wrote on the order "to Fergus Falls," indicating he thought that, were he committed, he would be sent to Fergus

Falls Regional Treatment Center, as has happened in the past. It was on this belief that he decided not to appear at the hearing. On cross examination, appellant testified that he was not served with a copy of the petition at all in the hospital. He obtained the copy which he gave to his attorney from his medical records at the security hospital and was told this was the same copy which he should have received. Appellant also indicated that the attorney who represented him on the initial hearing did not tell him he was going to the security hospital.

Respondent asked the trial court to take judicial notice of the affidavit of service of the petition upon appellant. The court stated that, in addition, it would take judicial notice of the September 6 order initially committing appellant. The court noted appellant apparently had a conversation with his counsel on September 4, in which he said he was not going to attend the hearing. On September 6, he told the deputy and Dr. Bentson the same. The court stated under the circumstances it was going to deny the motion.

After this testimony was completed, evidence was taken on whether appellant should be committed as mentally ill and dangerous for an indeterminate period. Dr. Douglas Fox, a psychologist at the Minnesota Security Hospital, evaluated whether appellant was mentally ill and dangerous. Appellant was diagnosed as schizophrenic, paranoid type, and has a history of alcohol abuse.

The hospital based the determination of dangerousness on appellant's history, both remote and recent, prior to coming to the hospital. The remote history included appellant's delusional beliefs that the world should be ruled with an iron rod and threats of assaults upon several individuals with an iron rod. More recently, he was involved in an incident in which the police had to remove him from his home with tear gas and an incident where he grabbed his mother around the neck and stated how easy it would be kill her. Fox acknowledged that individuals are not very good at predicting whether a person is going to be

dangerous, but stated the best predictor is past behavior. Fox recommended commitment of appellant as mentally ill and dangerous to the Minnesota Security Hospital.

The trial court found appellant was mentally ill and dangerous and committed him to the Minnesota Security Hospital for an indeterminate period. Wayne Allen Grafstrom appeals.

## ISSUES

1. Was the trial court clearly erroneous in determining that appellant received both sides of the commitment petition?

2. Were appellant's due process rights and rights under Minn.Stat. § 253B.18, subd. 1 (1990) violated because he did not receive proper notice that the petition was for judicial commitment as mentally ill and dangerous?

3. Did the trial court clearly abuse its discretion in allowing expert testimony as to appellant's future dangerousness?

4. Did the evidence fail to establish that commitment as mentally ill and dangerous was the least restrictive alternative?

## ANALYSIS

### I.

■ Appellant contends the trial court was clearly erroneous in determining that he received the second page of the petition which referred to commitment as mentally ill and dangerous.

Under the current version of Minn. R.Civ.P. 52.01,

[f]indings of fact, *whether based on oral or documentary evidence,* shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

(emphasis added); *First Trust Co. v. Union Depot Place,* 476 N.W.2d 178, 181–82 (Minn.App.1991), *pet. for rev. denied* (Minn. Dec. 13, 1991). The reviewing court should not reverse findings "unless it is left with a definite and firm conviction the trial court made a mistake." *Id.* at 182. The evidence must be viewed most favor-

ably to the prevailing party. *Id.* The trial court had evidence from which it could conclude appellant received both pages of the petition, and its decision is not clearly erroneous.

## II.

The next issue is whether appellant's statutory and due process rights were violated because the petition did not provide adequate notice that the petitioner sought commitment of appellant as mentally ill and dangerous.

Any interested person may file a petition for commitment. Minn.Stat. § 253B.07, subd. 2 (1990). The petition shall set forth the name and address of the proposed patient, the name and address of the patient's nearest relatives, the reasons for the petition, and a factual description of the patient's recent behavior. *Id.* The proposed patient must be served with notice of the proceedings and the filing of the petition:

> A plain language notice of the proceedings and notice of the filing of the petition, a copy of the petition, a copy of the physician's supporting statement, and the order for examination and a copy of the pre-petition screening report shall be given to the proposed patient, his counsel, the petitioner, any interested person, and any other persons as the court directs. All papers shall be served personally on the proposed patient.

Minn.Stat. § 253B.07, subd. 4. A separate section addresses procedures for commitment as mentally ill and dangerous.

> Upon the filing of a petition *alleging that a proposed patient is mentally ill and dangerous to the public*, the court shall hear the petition as provided in sections 253B.07 and 253B.08.

Minn.Stat. § 253B.18, subd. 1 (emphasis added). Minn.R.Civ. Commitment 1.02 provides that "[t]he petition shall specify the disposition sought."

Appellant argues that the minimum statutory mandate for commitment as mentally ill and dangerous is the filing of a petition which facially seeks such a commitment. Therefore, he contends it violates statutory requirements to be committed as mentally ill and dangerous on the basis of a petition which alleged he was only mentally ill.

■ A petition should not be held insufficient because of technical objections, if the rights of the patient have been adequately protected. *In re Leary*, 272 Minn. 34, 39–40, 136 N.W.2d 552, 555–56 (1965). Ambiguities in the civil commitment law should be construed against the state, and in favor of the person being deprived of liberty. *In re Colbert*, 464 N.W.2d 505, 507 (Minn.1991).

One of the obvious purposes of indicating the petition is for commitment as mentally ill and dangerous is to give the proposed patient notice as to the statute under which the commitment is being pursued. There are significant differences between commitment as mentally ill, and commitment as mentally ill and dangerous. Commitment as mentally ill is for a determinate period of time; the initial commitment may not exceed six months, Minn.Stat. § 253B.09, subd. 5, and subsequent periods may be no longer than one year. Minn.Stat. § 253B.13, subd. 1. In contrast, after an initial commitment as mentally ill and dangerous, a review hearing must be held within 60 days. Minn.Stat. § 253B.18, subd. 2. If the trial court determines the person is mentally ill and dangerous, the patient is committed for an indeterminate period. Minn.Stat. § 253B.18, subd. 3. Thereafter, a patient may be discharged only by specified procedures which require a petition and hearing as set out in Minn. Stat. § 253B.18. Minn.Stat. § 253B.18, subd. 3.

■ The petition on the face of the front page did not give notice that it was for commitment as mentally ill and dangerous. Instead, it stated the petition was for commitment as mentally ill. It is only on the second page of the petition that the words "mentally ill and dangerous" can be found. This does not constitute adequate notice. The omission constitutes more than a mere technicality. Further, appellant asserts that he was prejudiced, contending that he did not attend the initial hearing because he thought the petition was for commitment only as mentally ill.

Appellant also contends that the failure to provide notice violated his due process rights under the state and federal constitutions. This court has stated in relevant part:

It is fundamental that a party must have notice of a claim and the opportunity to oppose the claim before a binding adverse judgment may be entered. *Folk v. Home Mutual Insurance Co.*, 336 N.W.2d 265, 267 (Minn.1983) (trial court must base relief on issues raised by pleadings or litigated by consent). Due process requires that a party be given notice of a proceeding. Notice is a prerequisite for the trial court to exercise personal jurisdiction and to render a decision binding as to that party. *Zak v. Gypsy*, 279 N.W.2d 60, 64 (Minn.1979). No valid judgment can be rendered against a party without due service of process, and any judgment rendered without proper notice is absolutely void, not merely irregular or erroneous. *Lange [v. Johnson*, 295 Minn. 320, 324, 204 N.W.2d 205, 208 (1973) ].

*In re Bowers*, 456 N.W.2d 734, 737 (Minn. App.1990); *see also State ex rel. Anderson v. United States Veterans Hosp.*, 268 Minn. 213, 221, 128 N.W.2d 710, 716–17 (1964) (person with respect to whom petition for commitment is filed is entitled to reasonable notice and opportunity to be heard); *In re Wretlind*, 225 Minn. 554, 561, 32 N.W.2d 161, 166–67 (1948) (before incompetent infant may be placed in custody, adequate notice of hearing and purpose of hearing must be served on minor through a guardian or representative named by court). Failure to give appellant adequate notice violated his due process rights.

Regarding proper disposition, appellant asserts that the matter should be remanded for new proceedings, or that his commitment should be only as mentally ill. Under Minn.Stat. § 253B.18, subd. 2, if the court finds that a patient qualifies for commitment as mentally ill, but not mentally ill and dangerous, the court may commit the person as mentally ill. Appellant's commitment shall therefore be as mentally ill. Accordingly, the matter will be remanded for determination of proper placement. A

person committed as mentally ill may be placed at the security hospital. *See In re King*, 476 N.W.2d 190, 193 (Minn.App. 1991). We note that a new petition to commit appellant as mentally ill and dangerous can be filed at any time. *See* Minn. Stat. § 253B.18, subd. 1.

### III.

Next, appellant objected below to Dr. Fox's testimony as to appellant's future dangerousness, on foundation grounds. The trial court overruled his objection. While it may not be necessary to reach this issue in light of our decision above, we briefly address it.

An expert may give an opinion based upon a factual foundation, even though it bears directly on an issue to be determined by a fact finder. *Gardner v. Coca–Cola Bottling Co.*, 267 Minn. 505, 513, 127 N.W.2d 557, 563 (1964). The court ordinarily has wide latitude in determining whether there is sufficient foundation. *Id.* at 513–14, 127 N.W.2d at 563. A decision of the trial court will not be reversed absent a clear abuse of discretion, even if this court would have reached a different result regarding the sufficiency of the foundation. *See Benson v. Northern Gopher Enters.*, 455 N.W.2d 444, 446 (Minn.1990).

Appellant's argument rests upon the theory that it is impossible to predict future dangerousness. He cites various articles in his brief discussing the difficulty of doing so. However, this court has allowed a determination of dangerousness to be based upon past conduct, along with a determination that a person is likely to engage in future violent conduct. *See, e.g., In re Lufsky*, 388 N.W.2d 763, 766 (Minn. App.1986). Dr. Fox is experienced in evaluating the mentally ill and dangerous and explained the factual basis for his opinion. The trial court did not abuse its discretion in overruling appellant's foundational objection to Dr. Fox's opinion.

### IV.

Appellant also argues the evidence fails to establish that commitment as mentally

ill and dangerous was the least restrictive alternative. Again, it is not necessary to reach this issue. However, we note that the trial court's decision was based upon the record and would not have been clearly erroneous. *See In re Miner*, 424 N.W.2d 810, 814–15 (Minn.App.1988), *pet. for rev. denied* (Minn. July 28, 1988).

Finally, we wish to note that the respondent failed to file a brief. Therefore, pursuant to Minn.R.Civ.App.P. 142.03, the matter shall be determined on the merits. In this case, the county represented the petitioner who sought commitment of appellant as mentally ill and dangerous. This court was left to guess what the county's arguments were as to the shortcomings of the petition. We strongly urge the county in these circumstances to file a brief and defend the decision to deprive the patient of his liberty.

## DECISION

The decision of the trial court is reversed and remanded for determination of placement of appellant as mentally ill.

Affirmed in part, reversed in part, and remanded.